ORIGINAL

Approved: _____          20MAG1522
Brett M. Kalikow
Assistant United States Attorney

Before: HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - x
                                  :
UNITED STATES OF AMERICA          :   **SEALED COMPLAINT**
                                  :
            - v. -                :   Violation of
                                  :   21 U.S.C. § 846
REGINALD LATIMORE,                :
                                  :   COUNTY OF OFFENSE:
            Defendant.            :   NEW YORK
                                  :
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

ADAM FERSTAND, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration ("DEA") and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

1. From at least in or about January 2019, up to and including the present, in the Southern District of New York and elsewhere, REGINALD LATIMORE, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that REGINALD LATIMORE, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

3.      The controlled substances that REGINALD LATIMORE, the defendant, conspired to distribute and possess with intent to distribute were (i) five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A); and (ii) 40 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4.      I am a Task Force Officer with the DEA and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, and my conversations with law enforcement officers and law enforcement employees, as well as a review of documents and recordings. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.      Based on interviews with a confidential source ("CS-1"),[1] and my conversations with law enforcement officers, I have learned, in substance and in part, that:

a.      From at least in or about January 2019, through in or about the beginning of October 2019 (i.e., prior to being arrested by, and later working at the direction of, law enforcement), CS-1 obtained approximately one kilogram of cocaine approximately once or twice per week from an individual known to CS-1 as "Reggie," and later identified as REGINALD LATIMORE, the defendant, as described below. CS-1 typically paid LATIMORE approximately $32,000 per kilogram of cocaine.

---

[1] In or around the beginning of October 2019, CS-1 was arrested by the DEA and charged with narcotics trafficking offenses. In or around that same month, CS-1 began cooperating with law enforcement in the hopes of receiving leniency at sentencing. Information provided by CS-1 has proven reliable and has been corroborated in part by independent evidence, including recorded conversations and text messages.

2

b. CS-1 generally made these purchases from LATIMORE inside or in the vicinity of a particular apartment located on Park Place in Brooklyn, New York (the "Park Place Apartment"). To make these purchases, CS-1 generally traveled by car from upstate New York to meet LATIMORE at the Park Place Apartment, during which trips CS-1 generally traveled through the Bronx, New York.

c. Over the course of their dealings, CS-1 informed LATIMORE that CS-1 lived in upstate New York, and that CS-1 distributed the cocaine CS-1 obtained from LATIMORE in upstate New York.

6. Based on my review of law enforcement reports, video and audio recordings and text messages concerning the purchase of narcotics, interviews with CS-1, my conversations with law enforcement officers, and my personal involvement in this investigation, I have learned, in substance and in part, that:

a. On or about January 29 and January 30, 2020, CS-1, acting at the direction of law enforcement, arranged to purchase, and did purchase, approximately 100 grams of fentanyl from REGINALD LATIMORE, the defendant.

b. On or about January 29, 2020, CS-1 had a conversation with LATIMORE via video conference, which was consensually recorded.[2] During the conversation, in substance and in part, CS-1 asked LATIMORE if LATIMORE would be "around" tomorrow. LATIMORE said yes, and stated that he did not have the "32" but had the other thing LATIMORE and CS-1 had discussed. CS-1 confirmed that CS-1 was referring to the "other thing," and was looking for "100." LATIMORE then confirmed that he would be "around." Prior to this conversation, CS-1 had discussed with LATIMORE the possibility of purchasing fentanyl from LATIMORE.

i. Based on my training, experience, and participation in this investigation, I believe that in this conversation, CS-1 was asking LATIMORE if LATIMORE would be able to sell narcotics to CS-1 the following day. LATIMORE responded that yes, he was available, but that he did not have cocaine, which he referred to as "32," which is the price (in thousands) for a kilogram of cocaine based on CS-1's and LATIMORE's prior dealings.

---

[2] Law enforcement agents attempted both to video and audio record the video conference. However, the video recording malfunctioned, and captured only the beginning portion of the conversation. The audio recording captured the entire conversation.

3

LATIMORE indicated, however, that LATIMORE had fentanyl, referring to the "other thing" that LATIMORE and CS-1 had previously discussed. CS-1 then stated that he wanted 100 grams of fentanyl ("100"), and LATIMORE confirmed that he would be able to sell that quantity to CS-1.

   c. On or about January 30, 2020, at approximately 12:30 p.m., CS-1, who was in Manhattan, New York, sent a text message to LATIMORE in advance of completing the drug transaction. The text message stated, "What's up bro I'm in Manhattan so I should be there between 130-2." LATIMORE responded, "Ok. I'll be waiting."

   d. On or about January 30, 2020, at approximately 1:45 p.m., CS-1 drove to the vicinity of the Park Place Apartment and parked. Law enforcement agents observed LATIMORE exit the building where the Park Place Apartment is located. LATIMORE first walked to a different parked vehicle ("Vehicle-1"). LATIMORE opened one of Vehicle-1's doors and appeared to place something inside before closing the door. LATIMORE then walked towards and entered CS-1's car. CS-1 handed LATIMORE approximately $4,500 in pre-recorded buy money, and LATIMORE handed CS-1 a clear plastic package containing a white solid substance.

   e. While CS-1 and LATIMORE were inside of Vehicle-1, they had a conversation, which was recorded. During the conversation, in substance and in part, CS-1 said that CS-1 might come back to LATIMORE soon for more fentanyl, and also cocaine. LATIMORE responded, "I'll make a phone call and see if I can get something back over here. But I had two this morning, and as soon as they came, I sent them right back out the door." LATIMORE then described how he takes 100 grams of fentanyl and mixes it with 125 to 150 grams of "cut" because LATIMORE does not "have time" for "dropping bodies." LATIMORE then said that if CS-1 got rid of "that," LATIMORE keeps plenty around, and would sell it "wholesale" to CS-1 for "35."

    i. Based on my training, experience, and participation in this investigation, I believe that in this conversation, LATIMORE told CS-1 that LATIMORE did not presently have cocaine, because he had had two kilograms earlier in the day but sold them quickly ("But I had two this morning, and as soon as they came, I sent them right back out the door."). LATIMORE then described how he mixes the fentanyl with a cutting agent to reduce its potency and avoid drug overdoses ("dropping bodies"). LATIMORE also offered to sell CS-1 more fentanyl because LATIMORE had more available and would sell it to CS-1 at a low price of $35,000 per kilogram.

4

f. When the meeting concluded, LATIMORE exited CS-1's car, and re-entered the building where the Park Place Apartment is located. Shortly thereafter, CS-1 met with law enforcement agents at a pre-determined location, and CS-1 handed law enforcement agents the package CS-1 received from LATIMORE.

g. Based on my training and experience, because the contents of the package that LATIMORE gave to CS-1 were solid as opposed to loose powder, I believe that the narcotics LATIMORE provided were taken off of a larger brick (typically one kilogram) of narcotics. The contents of the package also appeared to be between 100 and 200 grams in weight.

h. The contents of the package were later tested at a law enforcement laboratory and tested positive for the presence of fentanyl.

i. Law enforcement agents identified the Vehicle Identification Number for Vehicle-1, and determined, based on a review of a database available to law enforcement, that Vehicle-1 is registered to "Reginald Latimore."

j. Law enforcement agents obtained a picture of LATIMORE from a database available to law enforcement. On or about January 30, 2020, law enforcement agents showed the picture of LATIMORE to CS-1. CS-1 positively identified the person depicted in the picture as the person CS-1 knew as "Reggie" from whom CS-1 obtained cocaine and fentanyl.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of REGINALD LATIMORE, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

ADAM FERSTAND
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
11th day of February, 2020

THE HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK